**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ACCU-TECH CORPORATION, CONTI
    ELECTRIC, INC., MULTIMEDIA
    COMMUNICATION SERVICES,
    STANDARD COMMUNICATIONS
    CORPORATION, and LEARNING
    CONSULTANTS, INC.,

        Cross-Plaintiffs,

                                            Case No. 03-71027
vs.                                            HONORABLE VICTORIA A. ROBERTS

DETROIT PUBLIC SCHOOLS,

        Cross-Defendant,

_____/

## OPINION AND ORDER

**I.    INTRODUCTION**

This matter is before the Court on Motions for Summary Judgment filed by Cross-Plaintiffs Accu-Tech Corporation, Standard Communications Corporation [Doc. 252] and Multimedia Communications Services Corporation [Doc. 264]. Cross-Defendant Detroit Public Schools filed a Cross Motion for Summary Judgment [Doc. 257]. For the reasons stated, the Court DENIES Cross-Plaintiffs' Motions and GRANTS Cross-Defendant's Motion.

**II.    BACKGROUND**

On December 20, 2000, the Detroit Public Schools ("DPS") released a Request for a Proposal ("RFP") entitled "Building Wiring, Switches, PBXS and File Servers." Accu-Tech Ex. 2. The RFP stated: "At contract signing, the Contractor will furnish to

DPS a contract Performance and Payment Bond with good and sufficient sureties, satisfactory to DPS, in the amount of 100% of the accepted bid good for the life of the project." Accu-Tech Ex. 2 at p. 11.

DPS awarded the approximately $24 million contract to Global View Technologies, LLC ("Global View"), which subsequently assigned the contract to Clover Technologies, Inc. ("Clover"). DPS acknowledged and agreed to the assignment ("DPS-Clover contract"). DPS Resp. to Standard Comm. Req. for Admissions at p. 3. The DPS-Clover contract incorporated the RFP by reference.

In January 2002, Clover obtained Payment and Performance Bonds from Liberty Mutual Insurance Company ("Liberty Mutual"). Both bonds noted that the DPS-Clover contract amount was $24 million and the bonds were set at $5 million. Cross-Plaintiffs submit that the Payment Bond was more than $1 million less than the minimum 25 percent required by the Michigan Public Works Bonding Act, *Mich. Comp. Laws* § 129.201 *et seq*.

In its performance of the contract, Clover entered into agreements with multiple subcontractors, including Accu-Tech Corporation ("Accu-Tech"), Multimedia Communication Services of Michigan ("Multimedia"), and Standard Communications Corporation ("Standard"). DPS was not a party to those agreements.

On February 18, 2003, DPS sent a letter to the Chief Executive of Clover, indicating that DPS was considering terminating the contract pursuant to the contract default provisions. DPS invoked Clover's failure to timely complete or correct defective work. DPS gave Clover an opportunity to present its position in a meeting scheduled for

March 6, 2003. However, on February 25, 2003, Clover filed for bankruptcy. It had not completed or corrected alleged defective work, and did not attend the March 6, 2003 meeting.

On March 13, 2003, Liberty Mutual filed an interpleader action, alleging that it had received multiple claims to the $5 million Payment Bond and that it did not know which claims were valid. Liberty Mutual also made a claim against DPS for unpaid contract balances. DPS sent another letter to Clover on March 14, 2003, notifying it that DPS had terminated the contract.

DPS concedes that approximately $1.55 million of the contract funds have not been disbursed, but asserts that this amount represents only a portion of the more than four million dollars expended by DPS to correct or finish Clover's work.

In response to Liberty Mutual's Complaint, various defendants asserted cross-claims against DPS. The cross-claims were characterized as: (1) statutory bond claims; (2) breach of contract/third party beneficiary claims; (3) unjust enrichment/quantum meruit claims; and (4) contract balance claims. In a March 1, 2004 Order, the Court dismissed Liberty Mutual's claim on the contract balance based on a constructive trust theory with regard to the payment bond. The Court also rejected cross-claimants' actions against DPS, except for their claims for the contract balance, inasmuch as DPS conceded in its Reply Brief to Liberty Mutual's Response, that unpaid suppliers and subcontractors may have equitable liens on the contract balances.

The Court set a deadline for cross-claimants to file amended cross-complaints asserting equitable lien claims for the contract balance held by DPS. Accu-Tech, Conti

Electric, Inc., Multimedia, and Standard filed equitable lien claims.  Learning Consultants, Inc. filed an amended cross-complaint, but did not assert an equitable lien claim.[1]  Conti-Electric, Inc.'s claim was dismissed upon stipulation of the parties on January 21, 2005.  Accu-Tech and Standard filed a joint motion for summary judgment on March 15, 2005.  Multimedia filed a separate motion for summary judgment.  DPS filed a cross motion for summary judgment on all claims to the contract balance.

### III.  STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).  A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact.  *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995).  To

---

[1] Learning Consultants' cross-complaint was subsequently dismissed.

meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

IV. **APPLICABLE LAW AND ANALYSIS**

Similar to subrogation, the doctrine of equitable lien "is expressed in 'equality is equity' and applies in cases where the law denies relief and where to follow it would work injustice." *Buhl v. Kavanagh*, 118 F.2d 315, 322 (6th Cir. 1941). "In the absence of an express contract, a lien based upon the fundamental maxim of equity may be implied and declared by a court of equity out of general considerations of right and

justice as applied to the relationship of the parties and the circumstances of their dealing." *Id.*; *see also Tustin Elevator & Lumber Co. v. Ryno*, 373 Mich. 322 (1964); *Spartan Asphalt Paving Co. v. Grand Ledge Mobile Home Park*, 71 Mich. App. 177, 188 (1976). Thus, in determining whether an equitable lien exists, a court is less concerned with the form of the agreement, and more focused on the intention of the parties. *See generally id.* Importantly, "[e]quity will create a lien <u>only</u> in those cases where the party entitled thereto has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled." *Senters v. Ottawa Savings Bank*, 443 Mich. 45, 54 (1993) (emphasis added) (*quoting Cheff v. Haan*, 269 Mich. 593, 598 (1934)); *see Lorimar v. Berrelez*, 331 F.Supp.2d 585, 593 (E.D. Mich. 2004).

Accu-Tech and Standard contend that even though the contract balance is held by DPS, the school system has no priority to the funds because DPS asserted a claim under the performance bond. Indeed, they assert that the dispute is truly between Liberty Mutual and Cross-Plaintiffs as to priority to the funds, and that their priority is superior to that of Liberty Mutual. Multimedia argues that it has a right to the contract balance because it was not given any prelitigation notice of defects.

DPS argues that it has a priority to the funds because Liberty Mutual has not yet agreed to fully perform under the performance bond. Additionally, DPS maintains that the terms of the performance bond require that any contract balance be dedicated to the cost of completion of the project. DPS also contends that the claims are barred under Michigan's Governmental Immunity Act and case law interpreting the availability of equitable lien claims. Further, DPS maintains that it placed the general contractor on

notice of the defects.

### A. Governmental Immunity Does Not Bar the Equitable Lien Claims

Before discussing the substance of the equitable lien claim arguments, the Court must first determine if the claims are barred by Michigan's Governmental Immunity Act. In Michigan, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *Mich. Comp. Laws* § 691.1407(1). It is undisputed that DPS was engaged in a governmental function when this cause of action arose since DPS is authorized to build and equip its public school buildings. DPS, however, contends that it is clothed in immunity, inasmuch as while Cross-Plaintiffs state that their claims are in equity, they, nonetheless, sound in tort and are barred under Michigan's governmental immunity statute. Relying primarily on *Forest City Enterprises, Inc. v. Leemon Oil Co.*, 228 Mich. App. 57 (1998), DPS contends that because Plaintiffs seek money damages, as opposed to an injunction or specific performance, their claim is not one seeking equitable relief. Not surprisingly, Cross-Plaintiffs disagree.

Michigan's Governmental Immunity Act provides for broad immunity from tort liability. *See Tryc v. Mich. Veteran's Facility*, 451 Mich. 129, 134 (1996). However, when interpreting the limits of the term "tort" in relation to the Michigan Constitution, the Michigan Court of Appeals stated the term was not broader than "injuries to property and persons." *Bragg v. City of Kalamazoo,* 86 Mich. App. 700 (1978). Cross-Plaintiffs are not seeking funds for injuries to person or property. Indeed, they are seeking the balance due on a contract for payment of services rendered for the benefit of DPS.

Importantly, as noted by Accu-Tech and Standard, even though their loss exceeds the contract balance, their claim seeks only the contract balance.

DPS' reliance on *Forest City Enterprises, Inc. v. Leemon Oil Co.* is misplaced. *Forest City Enterprises* interprets provisions of the Michigan Environmental Response Act (MERA), *Mich. Comp. Laws* § 299.601 *et seq.*, not the Governmental Immunity Act. Additionally, DPS contends that the key distinction in whether Cross-Plaintiffs' claims sound in tort or equity depends on whether or not they seek money damages.  See DPS Resp. Br. at pp. 22-24.  Taken to its logical conclusion, under DPS' argument, an individual would be barred from asserting a breach of contract action seeking money owed under the terms of the contract.  This would conflict with well-settled Michigan Supreme Court precedent that the governmental immunity defense is not available in contract claims against a governmental entity.  *See Koenig v. City of South Haven*, 460 Mich. 667, 675 (1999)(*citing Ross v. Consumers Power Co.* (On Rehearing), 420 Mich. 567, 647 (1984)).  Cross-Plaintiffs' equitable lien claims against DPS seek only the contract balance, and thus are equitable in nature, not an action in tort.  Accordingly, the equitable lien claims are not barred by Michigan's Governmental Immunity Act.

### B.     *DPS' Right to the Contract Balance Is Superior At This Juncture*

Cross-Plaintiffs contend that even though the contract balance is held by DPS, the school system has no priority to the funds because DPS asserted a claim under the performance bond and Liberty Mutual paid for the completion of the contract.  Indeed, Accu-Tech and Standard assert that the dispute is truly between Liberty Mutual and Cross-Plaintiffs and that their priority is superior to that of Liberty Mutual.  The facts,

however, do not support these allegations.

The centerpiece of Cross-Plaintiffs' argument is that "The government may not keep an unpaid contract balance for itself if a surety pays for the completion of the contract; it must instead pay the balance over to the surety." Accu-Tech/Standard Br. Supp. Mo. Summ. J. at p. 13. Multimedia concedes that its right to the contract balance is "subject only to DPS priority to use the funds for completion of the work." Multimedia Br. Supp. Mo. Summ. J. at p. 5.

Accu-Tech and Standard go on to assert that, under the circumstances, their rights to the funds are superior to those of the surety. Accu-Tech/Standard Br. Supp. Mo. Summ. J. at p. 15. They contend that DPS has dedicated the funds to Liberty Mutual because the surety has agreed to cover the costs of completion of the project under the performance bond. To support this allegation, Accu-Tech and Standard rely on: (1) DPS Response to Standard's Interrogatory No. 5 stating that DPS does not consider Liberty Mutual to be in breach of the performance bond agreement (Accu-Tech/Standard Exh. 6); (2) a September 2004 letter from DPS to Liberty Mutual demanding the difference between the contract balance and cost expended by DPS to complete the project (Accu-Tech/Standard Exh. 13); (3) a May 2003 letter stating that DPS would make the funds available to Liberty Mutual as required by the performance bond contract (Accu-Tech/Standard Exh. 11); and (4) the Reservation of Rights Agreement between DPS and Liberty Mutual dated August 2003 (Accu-Tech/Standard Exh. 16). DPS correctly responds that these documents in no way demonstrate that Liberty Mutual has agreed to fully perform under its performance bond; nor do the

documents demonstrate that DPS committed the contract balance to Liberty Mutual.

In *In re Rah Development Co., Inc.*, 184 B.R. 525 (W.D. Mich. 1995), the court reviewed federal equitable lien case law and outlined the hierarchy of entitlement to unpaid federal construction contract balances.

> ...[T]hat hierarchy gave priority to unpaid contractors (or to sureties that had paid those subcontractors) over the general contractor or the bankruptcy trustee. In fact, only the federal government, exercising its right to setoff, stands in line before unpaid subcontractors.

*Id.* at 537. *Rah Development* establishes that the government's right to setoff for incomplete or defective work is superior to that of subcontractors with regard to the remaining contract balance. Cross-Plaintiffs cite no case to contradict *Rah Development*. Indeed, Cross-Plaintiffs' reply brief only attempts to distinguish another case cited by DPS, *United States v. Munsey Trust Co.*, 332 U.S. 234 (1947). Thus, so long as DPS' expenses are greater than the remaining balance, and DPS is not reimbursed for completion of the work by Liberty Mutual, DPS has a superior right to the contract balance.

### C. *Cross-Plaintiffs Fail To Establish Essential Elements of Equitable Lien Claims*

DPS contends that Cross-Plaintiffs' claims fail because they cannot establish an essential element of an equitable lien claim in Michigan. Specifically, DPS relies on *Reed v. Noyce, Inc.*, 106 Mich. App. 113, 120 (1981), to support its proposition. In *Reed*, the plaintiff asserted what the court described as a constructive trust or an equitable lien against funds withheld by the county. The Court of Appeals noted

> As stated by the trial court, there is a statutory procedure which governs proceedings of the nature involved in this cause. See MCL 129.201 et seq.;

> MSA 5.2321(1) et seq.  Although equity may impose a constructive trust even where a legal remedy exists, it must be based upon a breach of a fiduciary or confidential relationship, misrepresentation, concealment, mistake, undue influence, duress or fraud. *Grasman v. Jelsema*, 70 Mich App 745; 246 NW2d 322 (1976).

According to DPS, Cross-Plaintiffs may not assert an equitable lien claim absent a breach of a fiduciary or confidential relationship, misrepresentation, concealment, mistake, undue influence, duress or fraud.  Accu-Tech and Standard respond that DPS fails to realize that *Reed* relates to constructive trusts and is not applicable to equitable lien claims.

Accu-Tech and Standard correctly note that constructive trust and equitable lien are not terms to be used interchangeably.  However, the two are similar in that, under Michigan law, they both are equitable remedies which require more than a mere sense of injustice to be established.  *Compare Grasman*, 70 Mich. App. at 742 (requiring a breach of a fiduciary or confidential relationship, misrepresentation, concealment, mistake, undue influence, duress or fraud to establish constructive trust); *and Senters v. Ottawa Savings Bank*, 443 Mich. 45, 54 (1993) (requiring fraud, accident, or mistake to establish equitable lien).  Thus, in order to establish an equitable lien on the contract balance, Cross-Plaintiffs must establish that they remain unpaid because of fraud, accident or mistake.  *Senters*, 443 Mich. at 54; *Cheff v. Haan*, 269 Mich. 593, 598 (1934); *Lorimar v. Berrelez*, 331 F.Supp.2d 585, 593 (E.D. Mich. 2004).

In *Senters*, Ottawa Savings Bank argued that it had an equitable lien on property over which Senters asserted ownership.  Senters, however, argued that the rights of the parties were governed by statute and no equitable lien existed.  The Michigan Supreme

Court found that absent fraud, accident or mistake, an equitable lien claim could not be established. The Court held that "although a general notion of injustice might appear to support [Ottawa Savings Bank's] assertion that [Senters] is receiving a windfall at [Ottawa Savings Bank's] expense," the equitable lien claim was, nonetheless, rejected because no fraud, accident or mistake was alleged. *Senters*, 443 Mich. at 56-57.

Citing *Kennedy Electric Co., Inc. v. United States Postal Service*, 508 F.2d 954 (10th Cir. 1975), Cross-Plaintiffs contend that equity requires distribution of the contract balance to the unpaid suppliers. In *Kennedy Electric*, the Postal Service failed to require a payment bond as necessary under federal legislation similar to Michigan's Public Works Bond Act. The general contractor filed bankruptcy and failed to fully compensate the subcontractors. Kennedy Electric Co., a subcontractor, filed suit alleging an equitable lien on the contract balance held by the Postal Service. The Tenth Circuit Court of Appeals found that an equitable lien existed and described the Postal Service's failure to require a payment bond as "misconduct." *Id.* at 960.

*Kennedy Electric*, however, is distinguishable from this case in several respects. First, *Kennedy Electric* relates to federal law, not Michigan law. Most importantly, the Michigan requirement that accident, mistake or fraud occur in order to establish an equitable lien does not appear to be a requirement under the federal regime. Second, unlike here, discussed *supra*, in *Kennedy Electric*, the Postal Service had not asserted a set off against the contract balance for completion or correction of the contractor or subcontractor's work. *Id.* at 987. Third, while a payment bond was issued in this case, the dispute surrounds the bond amount sufficiency under the Michigan Public Works

Bond Act, and whether DPS should have ensured that an appropriate bond was obtained. In *Kennedy Electric*, there was evidence that the Postal Service knew that no bond was acquired and failed to act.

Additionally, the "misconduct" that occurred in *Kennedy Electric* was the Postal Service's failure to act when it had knowledge that a payment bond was not acquired by the general contractor. Here, however, the Michigan Court of Appeals has stated that a governmental entity incurs a duty to ensure the validity of payment bond <u>only</u> when a subcontractor who is a party requests verification of the payment bond. *See ABC Supply Co. v. River Rouge*, 216 Mich. App. 396, 401-402 (1996). There is no allegation that Cross-Plaintiffs requested such verification. Thus, DPS was under no duty to ensure that the payment bond amount was appropriate.

In the Court's March 1, 2004 Order, the Court rejected Cross-Plaintiffs' constructive trust claims, in part, because Cross-Plaintiffs failed to establish their allegation of misrepresentation. Order at pp. 17-19. The same is true with regard to the equitable lien claim. DPS's failure to ensure that the full statutory payment bond was secured by Clover is insufficient to establish mistake, accident or fraud. *See ABC Supply Co.*, 216 Mich. App. at 401-402. Since DPS was under no duty, Clover's failure to secure the payment bond amount required by statute was not mistake, accident or fraud by DPS that deprived Cross-Plaintiffs of the amounts owed on their contracts with Clover. To find otherwise would expand DPS's duties and obligations under Michigan's Public Works Bond Act beyond those outlined by the Michigan Supreme Court and Michigan Court of Appeals.

For these reasons, the Court GRANTS Cross-Defendant's Motion for Summary Judgment on the equitable lien claims.

### D. *Multimedia's Non-Equitable Lien Claims Are Dismissed*

DPS contends that Multimedia's motion asserts claims under the Public Works Bond Act, third-party beneficiary law and estoppel. DPS correctly states that the Court's March 1, 2004 Order bars all further claims against DPS arising from this matter, except those alleging equitable liens. Order at pp. 2-3. Indeed, a Stipulated Order entered on May 24, 2004 and signed by counsel representing all parties, noted that all claims were "dismissed with prejudice except those claims preserved in the Court's May 13, 2004 Order" (i.e., only equitable lien claims). Therefore, to the extent that Multimedia asserts claims beyond those alleging an equitable lien, DPS's Motion for Summary Judgment is GRANTED.

### V. CONCLUSION

For the reasons stated, the Court DENIES Cross-Plaintiffs' Motions for Summary Judgment and GRANTS Cross-Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

        **s/Victoria A. Roberts**
**VICTORIA A. ROBERTS**
**United States District Judge**

**DATED:** 7/20/05